## Fox v. Hutton.

### Opinion delivered March 8, 1920.

1. SPECIFIC PERFORMANCE—BURDEN OF PROOF.—A purchaser, suing for specific performance of a contract for the sale of land, has the burden of showing that he has complied, or offered to comply, with the terms of the contract, or that he was ready and willing to do so, or that if there was any failure on his part it was caused by some default or neglect on the part of the vendor to comply with his part of the contract.

2. SPECIFIC PERFORMANCE—RIGHT TO ENFORCE.—In an action to compel specific performance of a contract of sale of land, evidence *held* not to show that plaintiff had done or offered to do all the things required of him before the vendor announced his purpose to treat the contract at an end, and therefore that relief should be denied.

Appeal from Mississippi Chancery Court, Chickasawba District; *Archer Wheatley,* Chancellor; affirmed.

*Geo. W. Barham. Chas. F. Sullenger* and *A. F. Barham,* for appellant.

1. The oral agreement here was collateral to the written agreement, and did not vary nor contradict it, and is not within the statute of frauds. 10 R. C. L. 1037. Appellee granted the extension of time, and a strict performance of the contract was waived by him. Appellee made no effort to assist appellant in perfecting arrangements for a loan, but actually prevented appellant from obtaining the money, and there was no breach by appellant, and appellee can not rightfully complain of the failure to perform, since the failure was entirely due to appellee's own conduct. 85 Ark. 596. There is no breach where performance is prevented by the conduct of the other party. *Ib.;* 102 Ark. 152; 15 *Id.* 376; 64 *Id.* 228.

2. Appellee waived any breach of contract as to time of performance. His own conduct was the controlling cause of the delay, and he waived strict performance, as well as rendered it impossible, and his case falls within the rule announced by this court. 7 Ark. 123; 59 *Id.* 405; 87 *Id.* 52; 83 Ill. 517; 127 Ala. 602; 70 Fed. 146; 85 Md. 337; 3 Page on Contracts, 1502; 89 Ark. 203-204. He can not insist upon forfeiture. 48 Ark. 413; 54 *Id.* 16; 61 *Id.* 266. Equity abhors a forfeiture and will relieve when expressly or impliedly waived. 1 Pom., Eq. Jur., 452; 59 Ark. 405; 75 *Id.* 410; 83 *Id.* 524; 91 *Id.* 137. Any conduct calculated to induce the other party to believe that a forfeiture will not be insisted on will be treated as a waiver. 102 Ark. 442. See, also, 51 *Id.* 105; 59 *Id.* 405; 77 *Id.* 168.

3. Appellee set an unreasonable time for the performance, and he acquiesced in the delay. After leading appellant to believe he would wait for the money, he gave appellant just four days to produce $12,000. This was unreasonable, arbitrary and unjust.

*Nelson & Keck,* for appellee.

In the trial below all the issues of law and fact were found for the defendant, and the complaint was properly refused. (1) Hutton agreed to furnish an abstract of title and failed and refused to do so, though aften requested, and rendered it impossible for plaintiff to perform his contract. (2) Plaintiff was ready, willing and able to comply with the terms of the contract, and so notified defendant, who failed and refused to carry out his obligations. (3) Plaintiff rented the lands to defendant for 1918, and should receive the rents. The contract contained mutual obligations and undertakings by the vendor and vendee. It was Fox's fault. When the contract was reduced to writing and signed, nothing was said about an abstract. 124 Ark. 70; 109 *Id.* 82. If there was any subsequent contract, which the court held there was not, it was without consideration and void. 118 Ark. 283. The complaint for specific performance was in the discretion of the chancellor and properly refused. 34 Ark. 663; 21 *Id.* 110.

Wood, J. This action was begun by the appellant against the appellee for the specific performance of a contract for the sale of a tract of land containing 120 acres in Mississippi County.

The appellant set out the contract, which was dated October 31, 1917. After describing the lands and reciting that appellee agreed to sell and appellant to buy same, the contract provides as follows: ''It is herein stipulated and agreed that a copy of this contract shall this day be deposited in the Bank of Manila, with a certified check for $500, executed by said Dr. V. R. Fox, payable to the order of J. M. Hutton, attached thereto as an earnest to witness and bind this contract. It is further stipulated and agreed that said J. M. Hutton is to deliver peaceable possession of said lands to said V. R. Fox or his order, together with a good and merchantable title to all of said lands and execute to said V. R. Fox, his heirs or assigns, a warranty deed to said lands, on or

before January 1, 1918, upon the said V. R. Fox paying to said J. M. Hutton or order the sum of twelve thousand dollars in addition to the aforesaid certified check for five hundred dollars.''

The appellant alleged that it was understood at the time of the execution of the contract that it would be necessary for appellant to borrow all or the greater part of the purchase money, and that if appellant did not succeed in procuring a loan by January 1, 1918, appellee would allow appellant such additional time as might be necessary to complete his negotiations for the loan; that a few days after the contract was executed appellant was notified by a loan company that the loan would be made to him upon approval of title; that he employed an abstractor to bring down the abstract of title to date; that after considerable delay appellant succeeded in obtaining abstracts from the loan companies who held liens upon the land; that the last abstract was received February 18, 1918; that appellant placed these abstracts in the hands of the loan company from whom he expected to borrow the money; that this company furnished appellant with the list of requirements necessary in regard to the title before the loan company would furnish the money; that one of these requirements was that appellant should discharge the liens which two loan companies held and to make a correction in the entry made by the clerk showing the satisfaction of a trust deed on the record; that the appellee did not aid the appellant in meeting the requirements of the loan company in perfecting the abstract of title which the loan company exacted before it would make the loan; that appellant worked diligently to perfect this abstract until March 11, when appellee arbitrarily declared that appellant must pay him and close the deal by March 15; that while negotiations were pending the loan company delivered appellee a statement of the amount of interest it would be necesary for appellee to pay before he could discharge their loan; that appellee refused to pay this amount which in itself was sufficient to prevent the making of the loan; that appellee

approached appellant and insisted that it was appellant's duty to pay the interest accruing on the loan from the date of the making of the contract, which appellant agreed to do; that appellant also offered at one time during the negotiations to pay the appellee the sum of $3,000 of the purchase price, which appellee refused; that after the making of the contract with appellee and while appellant was negotiating with the loan company to procure the necessary loan the lands greatly enhanced in value, being worth some $1,500 more at the time the appellee finally repudiated the contract than they were when the contract was executed; that while appellant was negotiating with a loan company the appellee interfered and prevented the loan company from making the loan by telling the agent of such company that he (appellee) was not going to comply with the contract.

Appellant further set up that there was an oral agreement between the appellant and the appellee by which the appellee was to hold the lands during the year 1918 and pay appellant, as rent therefor, one-fourth of all cotton and cotton seed and one-third of all corn raised on the land.

Appellant alleged that he had duly performed the contract on his part and that appellee refused to perform. Appellant, therefore, prayed that the appellee be required to perform his contract upon the payment to him of the purchase money and that appellant have judgment against the appellee in the sum of $2,650 for rent of the lands during the year 1918.

The appellee answered, admitting that he entered into the written contract set up in the complaint, but denied specifically the other allegations and alleged that appellant had never at any time offered to comply therewith, although repeatedly requested to do so. Appellee averred that until the expiration of the time allowed in the contract for the payment of the purchase money he was at all times ready, able and anxious to carry out the terms of the contract; that on account of the refusal of the appellant to comply with the terms of the contract

the circumstances had so altered and changed as to render it inequitable and unjust to require the appellee to convey the lands which circumstances were well known to the appellant during the life of the contract.

The appellant, among other things, testified that the reason that the contract was not carried out on or before January 1, 1918, as specified therein, was that he did not have the abstracts to eighty acres of the land; that it was appellee's place to furnish these abstracts.

Appellant was asked if he requested the appellee to furnish the abstracts and answered that he did after January 1 but not before; that on two different times he requested one Suggatt, who was acting as the agent for both of them in conducting the negotiations, to furnish him the abstract. The abstract of this particular eighty acres, it appears, was in the possession of a loan company. The appellant testified that Suggatt wrote this company for the abstract; that, after appellant realized that he was not going to be able to consummate the deal on or before January 1, 1918, he asked the appellee for an extension of time.

Appellant further testified as follows: "I said, 'Mr. Hutton, I want to ask you in the presence of these witnesses for an extension of time if it takes longer than January 1 to get my loan through.' I also said, 'It may just be a few days and it may be longer,' and he answered, 'Certainly that will be all right.' That was all that was said in regard to the extension of time."

Appellant testified that he got the loan approved a few days after the contract was made, but could not get the money until the Missouri State Loan Company, from which company he expected to borrow, had the abstracts examined. He did not secure the abstracts and send them to said loan company until February 11, 1918. The money was sent here direct, and appellant was ready to close the loan somewhere just after the middle of March. The loan company did not send the money earlier because it had heard through its agent that Hutton had backed out, and they would not send the money until it

was settled. The appellee did not say anything to appellant indicating that he did not intend to comply with the contract until March 11, and then he called appellant to one side and asked him if he was about ready to close the loan and at that time informed appellant that he (appellee) would not wait any longer than March 15. In the course of the conversation the appellee further stated that he agreed to give the extension of time, but did not aim for it to be so long; that he owed the banks the sum of $6,000. Appellant also told the appellee that the delay was on account of the abstracts that he (appellee) was to furnish, and that he (appellant) would pay the appellee then the sum of $3,000; that the appellee replied that would not do any good, as he owed $6,000 to the banks that he would have to pay.

The appellant, in answer to a question, stated that he was never ready at any time to close up the deal as per the terms of the written contract before Hutton backed out, the reason being that he was getting money from the Missouri State Loan Company and that company made certain requirements with regard to the abstracts, which it was appellee's duty to fulfill; that the failure to furnish the abstracts and perfect the loan and close the deal was not through any negligence of appellant.

The appellee testified that appellant never at any time after the contract was executed said that he was ready and willing to comply with the terms of the contract; that he (appellee), in order to make the sale, extended the time to March 15, in order to be able to buy Manila Bank stock which he (appellee) desired to purchase; that he gave appellant the statement of the indebtedness against his land and testified that if appellant had paid or tendered him the purchase price of the lands within the original or extended time he could and would have conveyed a good and merchantable title by warranty deed; that after appellant failed to get the money it was necessary for appellee to raise the money which he did from the Missouri State Loan Company; that appel-

lee had an abstract to all his lands besides the one held by the loan company (referred to by the appellant), and appellee would have been glad to furnish those abstracts to appellant, had he known that appellant wanted them; that neither appellant, Suggatt, his agent, nor Ashabranner, the agent of the Missouri State Loan Company, ever said anything to the appellee about an abstract or called upon him to do anything about the loan.

The appellee filed as an exhibit to his testimony the requirements made of the appellant by the loan company. These show that the abstracts were certified by the abstractor on January 5, 1918. These requirements also show that the only requirements affecting the lands of the appellee were concerning the paying off of the existing indebtedness, and the other requirements affected the lands of appellant. The exhibit shows that practically all the requirements exacted by the loan company pertained to the lands of the appellant which were also to be included in the mortgage to secure the loan.

The trial court found the issues of fact and law in favor of the appellee and dismissed appellant's complaint for want of equity, from which is this appeal.

The appellee did not set up in his answer, nor claim in his testimony, that the appellant had forfeited his rights under the contract by not paying the purchase money according to the time limit specified in the contract. On the contrary, the appellee extended the time twice. The failure of the parties, however, to consummate the contract on the day specified in the contract is important in determining at whose door the fault lies for not completing it on that day, and the other days to which the time was extended.

There is a decided and irreconcilable conflict in the evidence on that issue. The burden was upon the appellant to show as a condition precedent to the relief sought by him that he had complied or offered to comply with the terms of the contract, or that he was then ready and willing to do so, and that if there had been any failure upon his part such failure was caused by some de-

fault or neglect on the part of the appellee to comply with the duties which he was obliged to perform under the contract. *Henley* v. *Hengler,* 118 Ark. 283.

We are convinced that a preponderance of the evidence shows that the appellant had not done or offered to do all that the contract required of him before the appellee announced his purpose to treat the obligation of the contract as at an end. While the testimony of the appellant tends to prove that appellee was to furnish the appellant with abstracts of title to enable the appellant to borrow the purchase money, yet his testimony does not show that he ever made any request of the appellee to furnish these abstracts or notified appellee that it would be necessary for him to furnish same before the day specified in the contract when it should be fully performed. On the other hand, the testimony of the appellee shows that he had an abstract of all the lands, and that he would have been glad to have furnished the same to appellant if he had known that appellant wanted same. The testimony of the appellee shows that there was no defect in his title, that he readily borrowed money on the strength of his title from the same loan company with which the appellant was negotiating. The testimony of the appellee to this effect is corroborated by the agent of the loan company.

The contract carried mutual obligations, and we have reached the conclusion that the appellant has not shown a full compliance on his part with the terms of the contract so as to entitle him to a specific performance thereof on the part of the appellee.

The findings and decree of the chancery court are, therefore, correct.

Affirmed.