**HOLT v. MANLEY et ux.**

No. 5226.

Court of Civil Appeals of Texas.   Amarillo.
Dec. 2, 1940.

Rehearing Denied Jan. 13, 1941.

774

Sanders & Scott, of Amarillo (A. P. Smith, of Amarillo, of counsel), for appellant.

. Clifford Braly, of Pampa, and Clayton Heare, of Shamrock, for appellees.

FOLLEY, Justice.

On January 12, 1938, the appellant, D. E. Holt, and the appellees, T. K. Manley and wife, Edna E. Manley, entered into a written executory contract for the sale of three tracts of land in Dallam County, Texas. The appellant was the owner and the appellees the purchasers. The first tract is Section No. 25 in Block 2, Brooks and Burleson Survey, containing 640 acres of land and located about 11 miles west of Dalhart, Texas. The second tract contains about 850 acres and is composed of Section No. 8 in said Block 2, containing 640 acres, and 210.6 acres out of Section No. 7, Block A-7, A. C. Floyd original grantee. The second tract is located about 2 miles north of the first tract. The third tract is about 17 miles north and 9 miles west of the second tract and consists of the west one-half of Section 71, Block I, M. E. Hays original grantee, containing 320 acres of land. The total acreage in the three tracts is about 1,810 acres.

The contract price of the land was $12.50 per acre or a total consideration of $22,-625. There were separate loans against the three tracts aggregating an outstanding indebtedness of $12,512.20. As a part of the consideration for the land, this indebtedness was assumed by the appellees. For the balance of the consideration in the sum of $10,112.80 the appellees agreed to pay the appellant ten annual installments each in the sum of $1,011.28 with interest from date at 5% per annum, both principal and interest payable annually at Wheeler, Texas. The contract contained an accelerated maturity clause which shall later be discussed. It also provided that upon receipt of five of the installments of principal and interest the appellant would execute a deed conveying the land to the appellees. It was further provided that the first two tracts of land were rented to tenants; that the appellees should receive the rents thereon for 1938; that the appellees should have the immediate possession of the third tract; and that they should drill and completely equip an irrigation well on the latter tract on or before June 1, 1938.

The appellees admittedly did not perform any of the provisions of the contract. After their failure to pay the first matured installment of principal and interest, the appellant filed this suit, which we construe to be an action for specific performance. The appellant alleged the terms of the contract; that the appellees had failed to drill the irrigation well as agreed; that they had failed to pay the first annual installment of $1,011.28 and the annual interest due; that because of such failure the appellant had declared the entire purchase money debt matured and payable; that appellant had performed all of his obligations under the contract to date; that he was ready and able and willing to perform all the provisions of the contract and tendered a full and complete performance thereof upon the payment of the amount due him under the contract; and that by reason of the failure of the appellees to perform their obligations they owed the appellant the entire principal and interest agreed upon and for which the appellant sought judgment.

The appellees filed a general demurrer and a general denial and for special answer alleged that the appellant through his agent, A. T. Parton, had represented to the appellee T. K. Manley that all of the "land was what is known as 'shallow water land', that is water in sufficient quantities could be produced from under said land for the purpose of irrigating said land and from a depth of less than one hundred feet and in inexhaustible amounts; that is, amounts inexhaustible in the ordinary wells pumped by engines in the process of irrigation of said land"; that said agent further represented that each and every foot of said land was subject to irrigation and that a sufficient supply of water for irrigation was available at a depth of less than 100 feet beneath the surface of the ground; that such representations were untrue and made with the intent to induce the appellees to enter into the contract; that while the deal was pending the appellee T. K. Manley and the appellant's agent Parton went to Dallam County to the location of the land; that Manley made inquiry of the tenant on the land as to how deep the well located thereon actually was and the tenant was unable to

inform him of the fact; that the agent Parton again assured Manley that the land was what was known as shallow water land and subject to irrigation and stated he was in a great rush to return to his home and that there was no need to make further investigation; that Manley was thereby lulled into a sense of security and made no further investigations; that relying upon such representations he and his wife executed the contract; that only the west one-half of Section 71 possessed an adequate supply of shallow water for irrigation; that upon the remainder of the land water could be encountered only at a depth of from 300 to 500 feet and not in sufficient quantities or at a shallow enough depth adequate for irrigation; that the parties had mutually abandoned and rescinded the contract; that appellant had never at any time delivered the possession of such land to the appellees but still retained the possession thereof; and that the appellant was not therefore entitled to recover against the appellees.

In a trial before a jury findings of fact were made as follows: (1) That the agent Parton represented as a fact that all of the land was shallow water land; (2) that Manley relied thereon; (3) that the representation was a material inducement to Manley to sign the contract; (4) that the representation was false; (5) that the appellant and appellees did mutually abandon the contract; (6) that the desire of Manley to secure the title to the minerals under the land was not the paramount issue inducing the purchase of the land; (7) that the statements of Parton concerning the sufficiency of shallow water for irrigation were not statements of an opinion; (8) that Manley did not recognize such statements as an opinion of Parton; and (9) that Manley did not know more about the condition of irrigable water under the lands than did Parton. Upon this verdict the trial court rendered judgment that the appellant take nothing.

Before passing to the question of fraud, we deem it expedient to first dispose of the issue as to mutual abandonment and rescission of the written contract. Suffice it to say that if a mutual abandonment or rescission exists, there could be no recovery by appellant irrespective of the alleged fraud. The appellant attacks the finding of the jury on the question of abandonment because of the insufficiency of the evidence and because the alleged abandonment or rescission, having been unsupported by any written memorandum, was within the statute of frauds. Vernon's Ann.Civ.St. art. 3995. Both of these contentions must be sustained. The only evidence in support of the issue came from T. K. Manley. It was merely to the effect that Holt had never surrendered possession of the land to him, that he had not collected any rent therefrom and that he had told Holt he was going to turn the land back. Holt testified that since the date of the contract he, too, had collected none of the rents or revenues from the land and that he had left the same tenants on the land because Manley had requested him to do so. The only reasonable inference to be drawn from Holt's testimony is that he considered the possession of the land to be in Manley through the tenants left there at his request. There is no intimation in the evidence that there was any mutual agreement between the parties to abandon the contract nor was there a meeting of the minds of the parties upon such issue. Under these circumstances we think the testimony was insufficient to support the findings of the jury thereon. Moreover, the alleged abandonment, if amounting to anything, was, in effect, a rescission which was no doubt within the statute of frauds. In Texas the general rule is "that an agreement for the rescission of an executory contract for the sale of land is within the statute of frauds, and parol evidence of such rescission is inadmissible". McDonald et al. v. Whaley, Tex.Com.App., 244 S.W. 596, 598; Dial v. Crain, 10 Tex. 444; Sanborn v. Murphy, 86 Tex. 437, 25 S.W. 610. As will be noted in the authorities upon the subject, this general rule has its exceptions. Where there is a partial or complete performance of the parol agreement to rescind in such manner as to make it inequitable to apply the general rule, in order to avoid irreparable injury or to protect the acquired rights of the parties thereunder, a court of equity will remove the case from the influence of the statute and enforce the parol agreement to rescind. But no such condition exists in the instant case and we conclude that the question of mutual abandonment and rescission passes out of the case.

As we view the element of alleged fraud in this case, there is one issue which we think shall control our disposition of this appeal. This issue is with reference to the alleged independent investigation made by

Manley concerning the truth or falsity of the asserted representations. The matter is presented in connection with the trial court's action in overruling appellant's motion for judgment non obstante veredicto and also in connection with the court's refusal to submit to the jury appellant's requested issue No. 3 inquiring whether or not Manley examined and investigated the possibility of securing shallow water under the lands in question before the sale contract was executed. The appellant contends the record shows that Manley made such an investigation and thereby became charged as a matter of law with knowledge of all facts which a proper investigation would have disclosed.

There is no controversy as to the third tract of land. It is admittedly shallow water land as represented. It is with reference to the first two above mentioned tracts that the fraud is charged. The appellee, T. K. Manley, contends that all of the land was represented to him as being shallow water land and subject to irrigation. The appellant contends the alleged representation was made only concerning the third tract and no such representation was made as to the other two.

The testimony reveals that the appellant Holt resided in Wheeler County, Texas, and A. T. Parton, admittedly his agent, resided in Gray County, Texas, where he and Holt were associated together in the oil producing business. In 1938, and prior thereto, the appellee T. K. Manley resided in Gray County, where through his corporate company he was engaged in second-hand pipe and supply business and also what he termed "water business". The latter enterprise he explained as being the pumping of water to drill oil wells. Such water was pumped from wells, tanks and dams or from any place where it was available. For a number of years Manley's company had dug shallow water wells with pick and shovel to furnish water for drilling for oil, but he had never had any experience with any other kind of water wells. In the course of his business he had dug wells in the oil fields around Pampa, Vernon and Burkburnett, Texas. In digging these wells he had encountered water at various depths, sometimes deeper and sometimes shallower than he had expected.

For several years prior to the execution of the contract, Manley had been interested in irrigated farm lands. Parton knew this and at one time a few years before the sale of the land herein Parton took Manley to see some of Parton's irrigated land southeast of Amarillo, Texas. A short time before the signing of the contract, Parton went to Manley's home in Gray County and informed Manley that he thought he had what Manley wanted in some lands belonging to Holt in Dallam County. A trip was planned and about two weeks before January 12, 1938, Parton and Manley went together to Dallam County to see the Holt land. The day the trip was made was a very cold one and the roads were in bad condition. Some three inches of snow was upon the ground which was drifting considerably in the roads and near the fences. Under such conditions Manley admitted they were rushed for time. After eating lunch at Dalhart they drove out west to Section 25, the first tract. They drove around three corners of this tract and then to the improvements on the place. Here there was a windmill and water well. The tenant on the land was not at home but they talked with his 14 year old son. They talked with him relative to the water supply, but he knew nothing about it. Manley inquired of him as to the depth of the well but he knew nothing about that. Parton and Manley waited some little time for the return of the tenant and Parton suggested they get back home before it became late, remarking, "No use waiting; no telling when he will be here, we can go ahead and see the other piece and find out about this later on". Manley testified, however, that Parton was in no bigger rush than he was because it was cold and they both wanted to get away and "get back before it got too late".

Parton and Manley then proceeded two miles north to the second tract where they also drove to its three corners and then to its improvements. There was no one at home at this tract. There was a water well here also. Parton testified that at this particular well the sucker rods were out and standing in the derrick above and that he could tell from looking at the exposed sucker rods the well was from 160 to 170 feet deep. He supposed that Manley saw the rods and that he could have estimated from them the depth of the well.

From the second tract Parton and Manley traveled to the third tract of 320 acres some 20 or 25 miles northwest. There was no tenant on this tract. After looking at the land they went across its south line to an adjoining tract belonging to someone undis-

closed by the record where there was an irrigation well. The man living on this adjoining farm came out and talked with Parton and Manley about his irrigation well. From him they learned that it was only 20 or 25 feet to the first water, that the well was about 100 feet deep and would pump 800 gallons of water per minute. This man started up his water pump and demonstrated what it would do. Manley testified that it threw out a good supply of water. He further testified that Parton told him that all of the Holt land was shallow water land, that he relied thereon and would not have signed the contract had he known that only the third tract was shallow water land.

Parton admitted telling Manley the third tract was shallow water land but denied he made such representations as to the first two tracts. Incidentally, nowhere in Manley's testimony did he state that Parton or any one else ever made any representations to him as to the actual depth of the water under the land. As far as the first and second tracts are concerned, Manley's testimony in support of the alleged fraud is reduced solely to his claim that Parton told him the land was "shallow water land" or "what is known as shallow water land". On the contrary, Parton testified that from time to time during the negotiations he told Manley the water was from 160 to 170 feet deep upon the first two tracts.

After the above inspection Parton and Manley returned to Gray County. Some two weeks later the contract was entered into. There is no intimation that Parton or Holt in the meantime in any manner prevented Manley from making any further investigations relative to the land. It was not until some two or three months later that Manley claims he discovered the first two tracts were not shallow water land.

■ In addition to the above evidence, there is one other incident which we think has some bearing upon the issue of independent investigation. While Manley was on the witness stand and was being interrogated as to the conversations at the well on the first tract where he and Parton encountered the 14 year old boy, he was asked this question: "What, if anything, did Parton then tell you with reference to the depth of the water in that area?" In response to this interrogatory Manley replied: "Well, he didn't know about that particular well." We think the latter testimony was vital in that it was sufficient to put Manley upon inquiry and upon notice that his informant was not possessed of the knowledge Manley claims he was attempting to impart to him.

■ Under all the above testimony we are impelled to the conclusion there was sufficient evidence to raise appellant's theory of an independent investigation having been begun or made by Manley and that the court erred in refusing to submit the above mentioned requested issue based thereon. In this connection the appellees contend that the appellant was not entitled to the submission of the issue because he did not at the same time request an additional issue to the effect that Manley relied upon his own investigation, asserting that the submission of one without the other would have availed the appellant nothing. We cannot accede, however, to this contention. We think the rule is that when one undertakes to discover the truth of representations made to him he is charged as a matter of law with knowledge of everything which a proper investigation would have disclosed. The rule applicable to such a situation is aptly expressed in Gray v. Williams, Tex.Civ.App., 290 S.W. 844, 845, in the following language: "We think the rule is well settled that, where a party who claims to have been defrauded had the means to have discovered the fraud, if any existed, and undertakes to investigate for himself, and does make such investigation as he deems necessary, and is not hindered or prevented from doing so by any act of the other party, it must be held as a matter of law that he has knowledge of everything that a proper investigation would disclose, and hence would not be justified in acting on fraudulent representations, if any were made to him, merely because they were made to him."

In Nolan et ux. v. Young et al., Tex.Civ. App., 220 S.W. 154, 160, this court held: "If Nolan undertook to investigate and to discover for himself the truth or falsity of the representation, whether 'invited' or not, before he executed the contract, then he would be bound by everything a proper investigation would disclose."

In Patterson v. Bushong et al., Tex.Civ. App., 196 S.W. 962, 966, writ of error refused, the rule is again stated: "One who undertakes to discover the truth of representations made to him is charged with the knowledge of everything which a proper investigation would disclose, and would not be justified in acting upon fraudulent

representations merely because they were made to him."

We therefore sustain this assignment. Newman v. Lyman et al., Tex.Civ.App., 165 S.W. 136, writ of error refused; Foster v. Bennett et al., Tex.Civ.App., 178 S. W. 1001, writ of error refused; Hawkins v. Wells et al., 17 Tex.Civ.App. 360, 43 S.W. 816, writ of error denied; Farrar v. Churchill, 135 U.S. 609, 10 S.Ct. 771, 34 L.Ed. 246; Garrett v. Burleson, 25 Tex.Supp. 41; Cole v. Carter, 22 Tex.Civ.App. 457, 54 S. W. 914; Wortman v. Young, Tex.Com. App., 235 S.W. 559; Donoho et al. v. Hunter et al., Tex.Com.App., 287 S.W. 47; United Land & Irrigation Co. et al. v. Fleming et ux., Tex.Com.App., 239 S.W. 610; Waggoner et al. v. Zundelowitz, Tex. Com.App., 231 S.W. 721.

■ The appellees present a cross-assignment to the effect that the appellant was not entitled to declare all of the installment payments under the contract due because the contract contained no acceleration clause providing for the maturity of future installments. The stipulation in the contract under attack is as follows: "It is agreed and understood that failure to pay any installment of either principal or interest hereon when due shall at the election of the holder hereof, mature same, and it shall at once become due and payable and subject to foreclosure as the holder may elect." The appellees contend this agreement was to the effect that the appellant might declare due and matured only the past due principal and interest installments and does not include future maturing installments. To give this provision this construction renders it meaningless and ineffective. It would never be necessary to stipulate that past due obligations might be declared matured because they become matured ipso facto on their due date. Therefore, the phrase "mature same", as above used, must necessarily refer to the whole principal obligation with the accrued interest. If it is not so construed it does not mean anything. Surely the contracting parties did not intend a vain and useless stipulation.

It is chiefly in view of another trial that we discuss briefly the insufficiency of the evidence in the present record to support the jury findings that the alleged representations were either false or material. Although we doubt the appellant has sufficiently raised the matter in his brief, it is at least inferentially presented in such manner that we deem it necessary to dispose of it for whatever benefit it may be for the retrial of the case.

■ The testimony of Manley in regard to the representations fell far short of the allegations of his answer above indicated. His testimony was only to the effect that the land was represented as shallow water land while his pleadings more or less defined such term as being where water is found in sufficient quantities for irrigating the land from a depth of less than one hundred feet. Nowhere in Manley's testimony did he claim that Parton represented the actual depth of the water on the first two tracts or that water could be found in sufficient quantities to irrigate such land from a depth of less than one hundred feet. Therefore the factual basis for the alleged fraud is necessarily predicated only upon the purported verbal representation that the land was shallow water land. We know of no universally accepted meaning of this descriptive phrase and we are inclined to the opinion it is purely a relative term with varying meanings in different localities. The jury was not instructed as to the meaning of the term nor does the evidence conclusively reveal the same. Under such circumstances, we doubt the record clearly establishes the falsity of the purported representation.

■ As to the materiality of the alleged representation the record is equally deficient. Parton testified without contradiction that there was land near Amarillo under irrigation at the present time with water produced from a depth of 160 feet; whether profitably or not the testimony does not disclose. There was no issue submitted to the jury as to the feasibility of irrigating the first two tracts of land nor does the evidence establish as a matter of law that the land could not be profitably irrigated. We are therefore of the opinion the materiality of the alleged representation was not sufficiently shown.

■ We also suggest, in view of another trial, that the appellees amend their pleadings relative to the alleged fraudulent representations to conform as near as possible to the proof to be offered and that the trial court submit the issues thereon in conformity to the pleadings and the testimony supporting the same.

There are numerous other assignments of error and propositions in appellant's brief, but due to our holdings above the

same become immaterial and possibly will not arise upon another trial. We therefore deem it unnecessary to discuss them.

For the errors pointed out above the judgment of the trial court is reversed and the cause remanded.