## MANLEY et ux. v. HOLT.
### No. 5416.

Court of Civil Appeals of Texas. Amarillo.
March 30, 1942.

Rehearing Denied May 4, 1942.

Curtis Douglass and Clifford Braly, both of Pampa, and Clayton Heare, of Shamrock, for appellants.

Sanders & Scott, of Amarillo (A. P. Smith and E. T. Scott, both of Amarillo, of counsel), for appellee.

STOKES, Justice.

This is the second appeal in this case, the opinion in the first appeal being reported in 146 S.W.2d 773. The record shows that on the 12th of January, 1938, appellee, D. E. Holt, and appellants, T. K. Manley and wife, Edna E. Manley, entered into an executory contract for the sale by appellee to appellants of three tracts of land in Dallam County. One tract of 640 acres and another of 850 acres are located west of·Dalhart, and the third tract of 320 acres is located some twenty or more miles northwest of these two tracts. Appellants agreed in the contract to pay appellee $12.50 per acre for the 1,810 acres of land, making a total consideration of $22,625, of which amount $12,512.20 was evidenced by the assumption of three loans, evidenced by three separate notes secured by three deeds of trust, one on each of the tracts and all held by the Federal Land Bank of Houston. The balance of the consideration, amounting to $10,112.80, was to be paid in ten equal annual instalments, bearing interest at the rate of five per cent per annum, both principal and interest payable annually. The contract contained a provision that failure of appellants to pay any instalment of the principal or interest when due would mature the entire indebtedness at the option of appellee. It was further provided therein that when five of the instalments of principal and interest had been paid, appellee would execute a deed conveying the land to appellants. The two tracts west of Dalhart were rented to tenants at the time and the contract provided that appellants should receive the rents thereon for the year 1938, and that they should have immediate possession of the 320 acre tract. It was provided further that they should drill, complete and equip a well on the 320 acres suitable to furnish water for irrigation purposes, same to be completed by June 1, 1938. The Federal Land Bank loans were payable in semi-annual instalments, aggregating $441.02, on June 1st and December 1st of each year, and it was provided in the sales contract that the first instalment assumed by appellants was the one falling due December 1, 1938, the effect of which was to place upon appellee the burden of discharging the instalment falling due June 1st of that year, and the record shows he paid it when it matured.

The record does not show when the suit was filed, but on June 6, 1941, appellee filed his first amended original petition in which he set up the contract of sale and alleged that appellants had failed to drill the well on the 320 acre tract, and had failed to pay the first annual instalment of $1,011.28, together with the interest due thereon, by virtue of which he had declared the entire series due and payable. He alleged that he had performed all of his obligations under the contract up to the date of filing the pleading, tendered a full and complete performance, and alleged that he was ready, able and willing to perform all of the obligations placed upon him by its terms. He prayed for judgment against appellants for $11,011.28 and interest, all of which he designated as damages accruing to him on account of the appellants' failure to comply with the terms of the contract and pay the amount they had agreed to pay as the purchase price for the land.

Appellants answered by setting up fraudulent representations made to them by A. T. Parton, the agent and representative of appellee, who negotiated the sale and exhibited the land to appellant, T. K. Manley, to the effect that the land was "shallow water land," that is, that water at a depth ranging from 25 to 100 feet could be produced in sufficient quantities to irrigate the land; that such representations were untrue and were made with the fraudulent purpose and intention of inducing them to enter into the contract; that they relied thereon and would not have entered into the contract had such representations not been made. Further allegations were to the effect that appellants were desirous of procuring land that could be irrigated and in which there was an ample supply of water available for irrigation purposes, and that they were interested in purchasing the land only because they believed it to be such.

By a supplemental petition appellee denied the allegations of fraud and alleged that before the contract of sale was consummated appellant, T. K. Manley, made a rigid inspection, examination and investigation of the land and knew the kind and character thereof, as well as all of the true facts with reference to the availability of water for irrigation purposes; that if he was not in possession of full information concerning the same, the knowledge gained by him from such investigation as he did make was sufficient to place him upon inquiry concerning the amount and availability of water for irrigation purposes.

The record shows that appellants failed to pay the instalments falling due December 1, 1938, on the Federal Land Bank's indebtedness, and the land was sold in August and September, 1939, under the powers of sale in its deeds of trust. The Federal Land Bank became the purchaser at the sales and the 320 acre tract was afterwards sold by it to other parties. It seems that neither of the parties knew of the foreclosures until a short time before the case was tried the last time.

The case was submitted to a jury upon special issues in which they were requested to find whether or not the representations concerning the amount and availability of water for irrigation purposes, as alleged by appellants, were made to T. K. Manley by the agent of appellee; whether or not such representations were relied upon by appellants and were material inducements to them to execute the contract; whether or not such representations were false; whether or not T. K. Manley made an independent investigation concerning the water and its availability for irrigation purposes; and whether or not the facts concerning the water were equally ascertainable by appellants as they were by the agent Parton. The jury failed to answer any of the special issues except Special Issue No. 5 in which they found that appellant, T. K. Manley, did not make an independent investigation as to the depth of the water before the contract of sale was executed. Before the case was submitted to the jury, both appellants and appellee presented motions for peremptory instructions in their favor, both of which were overruled by the court, and after the verdict was rendered, appellee made a motion for a judgment non obstante veredicto. This motion was granted by the court and judgment entered that appellee recover of appellant, T. K. Manley, the sum of $11,629.72 with interest thereon and costs of suit.

Appellants presented and urged a motion for a new trial which was overruled by the court, and they have perfected an appeal to this Court, assigning errors of the court below, first, in rendering a money judgment against appellants because. appellee's suit was one for specific performance, and, secondly, error of the court in rendering judgment in favor of appellee after the jury had been unable to agree upon material questions of fact submitted to them by the special issues.

In considering the case upon the first appeal, we held that the suit was one for specific performance. There was no contention between the parties at that time that the pleadings were not sufficient to support a judgment for damages. The law is well settled that, in a proper case, damages for breach of a contract of sale may be recovered in the alternative when it is shown that specific performance is not possible. Mitchell . v. Sheppard et al., 13 Tex. 484; Nevins v. Thomas, 80 Tex. 596, 16 S.W. 332; Harris v. Warlick et al., Tex.Civ.App., 42 S.W. 356; Verschoyle v. Thomas, Tex.Civ.App., 261 S.W. 554. While appellee's petition did not contain an alternative prayer and, in fact, did not specifically pray for specific performance of the contract, it was sufficient to support a judgment for that relief. The prayer of the petition was that plaintiff have his "damages as set out above," costs of the action and such further relief as to which he might show himself entitled. The damages alleged in the petition were the consideration of $11,011.28 and interest thereon, which was provided in the contract as consideration to be paid by appellants to appellee for his equity in the land. The petition was therefore sufficient to support either a judgment for specific performance or one for damages such as was entered by the court.

In this connection, appellants contend that appellee was not entitled .to a judgment for specific performance because, the land having been sold under the deeds of trust held by the Federal Land Bank, and appellee having been thereby divested of any interest therein or title thereto, he was not in a position to perform his part of the contract and convey the land to the appellants. As we have said, the contract provided that, as part of the consideration, appellants assumed

and agreed to pay the obligations of appellee to the Federal Land Bank and pay the instalments falling due December 1, 1938, and thereafter. The foreclosures under the deeds of trust were occasioned by the failure of appellants to comply with this provision of the contract. While no deed had been executed by appellee conveying the land to appellants, the contract placed upon them the obligation and duty of discharging the instalments as they became due, and their failure to do this, as they had agreed in the contract to do, precipitated the foreclosures and made it impossible for appellee to convey the land to them. We are not impressed with the contention of appellants that appellee could have paid the instalments and thus prevented the foreclosures. He was under no obligation to appellants to pay such instalments. The contract placed that duty upon appellants and, having failed to discharge it, they must accept the consequences. The inability of appellee to perform his part of the contract by conveying or tendering a valid conveyance of the land having resulted from the default of appellants, placed appellee, for the determination of his right to maintain a suit for specific performance, in the same position in which he would have been if he had fully performed his obligations under the contract and tendered a good and sufficient conveyance of the land. Sanderson v. Sanderson, 130 Tex. 264, 109 S.W. 2d 744; Ley v. Patton, Tex.Civ.App., 81 S.W.2d 1087; Fox v. Hutton, 142 Ark. 530, 219 S.W. 28.

■ · In the Sanderson case, supra, the petition alleged that Mrs. Sanderson and Mrs. Kelton, the latter then deceased, had entered into a contract under which Mrs. Kelton had agreed to give Mrs. Sanderson certain town property and the proceeds from a farm in consideration of Mrs. Sanderson's agreement to live with and take care of Mrs. Kelton during the balance of her life. It further alleged that Mrs. Sanderson had complied with her part of the contract as far as she could, but that sometime before Mrs. Kelton's death she forbade Mrs. Sanderson to live with her and refused to permit her further to discharge her duties under the contract. The trial court sustained exceptions to the petition, and Judge Smedley, speaking for the Supreme Court, concluded that Mrs. Sanderson's full performance of the contract having been prevented by the wrongful act of Mrs. Kelton, the petition

stated a cause of action for specific performance, and the exceptions sustained by the trial court should have been overruled. Inasmuch as the plaintiff is entitled to recover damages in the alternative where it is alleged and shown that his failure to perform his part of the contract was due to the default of the defendant, and that under such circumstances he may likewise recover as for specific performance, we think it makes little difference whether the petition sets out, in the alternative, a cause of action for damages or is confined to one for specific performance. This is especially true in a case like this where the obligation under the contract which the petition seeks to enforce consists of the payment of consideration for that which the plaintiff, by reason of the wrongful act of the defendant, has been deprived of his ability to deliver.

We find no merit in this contention of appellants and it will be overruled.

■ What we have said in disposing of appellants' first contention is based upon the hypothesis that the record does not reveal legal proof of fraud perpetrated by appellee's agent in procuring appellants to execute the contract of purchase, as alleged in their pleadings. Of course, if the appellants were induced to enter into the contract by false and fraudulent representations of appellee's agent, Parton, it was void ab initio as to them and they were under no obligation to comply with its terms. That question is raised by their next contention, which is that the court erred in rendering judgment for appellee after the case had been submitted to the jury and they had been unable to agree upon material issues of fact submitted in the special issues. Appellants justified their failure and refusal to comply with the contract by their allegations of fraud which they alleged had been perpetrated upon appellant, T. K. Manley, by A. T. Parton, the agent and representative of appellee, concerning the supply and availability of sufficient water in the land for irrigation purposes. They alleged that he represented the land as being irrigable, that is, containing sufficient water at 25 to 100 feet, a depth sufficiently near the surface to make it feasible to irrigate the land. They alleged that these representations were false and were made for the fraudulent purpose of inducing them to purchase the land. The only testimony that was offered by appellants concerning this phase

of the controversy was that of appellant Manley, Robert O. Martin and A. T. Parton. Appellant Manley testified that he made a thorough investigation of the irrigability of the land and the supply of water some weeks after the contract was executed and that he talked to a number of persons concerning it. He said that from those with whom he talked he learned that the water was some three to four hundred feet below the surface. This testimony pertained to the two tracts lying west of Dalhart. The 320 acre tract is admittedly irrigable land and no question is raised concerning it. Robert O. Martin testified that the land was not located in the irrigation belt and that it was not irrigable land. He said that it was more than one hundred feet to water on the land and that it was not what is generally known as irrigable land. He said, however, that he had not inspected any of the wells in the immediate vicinity and had not seen any of them drilled, measured for depth or tested for water. On cross examination he admitted that as far as the tracts of land here involved were concerned, he knew nothing about them except what others had told him. His testimony showed that it was based upon the reputation of the land as to whether or not it was irrigable and whether or not there was sufficient water available for irrigation purposes. Parton's testimony was to the effect that he had no personal knowledge of the land nor the availability of water therein for irrigation purposes. He said he did not consider it 'shallow-water land' and that he told Mr. Manley he understood it was 160 to 170 feet to water on the two tracts 'mentioned. The testimony on the question was voluminous, but all of it was of the nature of that which we have mentioned and plainly was nothing more than hearsay testimony. Appellee objected to the testimony on that ground, but the objections were overruled.

 The rule is well established that matters of this kind can not be proved by hearsay or by establishing reputation. Proof of reputation is sometimes admitted from necessity to establish particular facts, such as the proof of the character of an individual, but the question of whether or not land contains water in sufficient quantities and at such a depth as to make it available for irrigation purposes can not be proved by hearsay nor by establishing the reputation of the land. If such a question could be established in that manner with reference to water, it could be established in the same way with reference to other minerals such as oil, coal, and the like, and it is well known in this country that lands which bear the reputation of being devoid of oil frequently are later developed into productive oil fields. The testimony offered by appellants on this question was not admissible, and the fact that it was admitted does not add to its probative force. It was based entirely upon hearsay and was therefore not sufficient to support appellants' allegations of fraud. Lewis v. J. P. Word Transfer Co., Tex.Civ.App., 119 S.W.2d 106; Keystone Pipe & Supply Co. v. Osborne, Tex. Civ.App., 73 S.W.2d 120; Henry et al. v. Phillips, 105 Tex. 459, 151 S.W. 533; Nations et al. v. Love, Tex.Civ.App., 26 S.W. 232; Starkweather v. Benjamin, 32 Mich. 305; Chalmers v. Whittemore, 22 Minn. 305.

 The only testimony offered by appellants to support their allegations of fraud being hearsay and inadmissible, and although admitted, being of no probative force, the record is left without any competent evidence to support such allegations. No excuse is offered by appellants for their failure to comply with the contract except that which is contained in their allegations of fraud, and there was, therefore, nothing to be submitted to the jury. The court having rendered its judgment under a proper motion for judgment non obstante veredicto, and the case being such as would have warranted, if not required, the court to give to the jury a peremptory instruction, we find no error in the action complained of by appellants. Article 2211, Vernon's Revised Civil Statutes.

We have carefully examined all of the assignments of error and propositions presented by appellants, and, in our opinion, no error is shown. The judgment will therefore be affirmed.